IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RICKY A. HOTZ,

      Petitioner,

    v.

GUY PIERCE, *Warden*,

      Respondent.           Civil No. 3:08-cv-850-DRH

### MEMORANDUM AND ORDER

**HERNDON, Chief United States District Judge:**

Before the Court is a Petition for a Writ of Habeas Corpus (Doc. 1) filed by Petitioner, Ricky A. Hotz and a Response to the Petition for a Writ of Habeas Corpus (Doc. 23) filed by Respondent, Guy Pierce. For the reasons stated below, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED** and this matter is **DISMISSED WITH PREJUDICE**.

### BACKGROUND

Petitioner Ricky A. Hotz ("Hotz" or "petitioner") is currently incarcerated at the Pontiac Correctional Center in Pontiac, Illinois, in the custody of Warden Guy Pierce ("Pierce" or "respondent"). (Doc. 23 at 1). Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 to challenge the constitutionality of his confinement.

On September 21, 2001, in the Circuit Court of Madison County, Illinois, petitioner entered a negotiated plea to one count of felony murder (first degree

1

murder committed in the course of a home invasion) and was sentenced to a term of natural-life imprisonment without the possibility of parole.

## I. Direct Appeal

Petitioner's appellate counsel appealed the conviction and sentence, raising the following grounds for relief: (1) that his plea was not knowing and voluntary because the trial court failed to adequately admonish him of the potential for a natural-life sentence on a conviction of felony murder; (2) that the sentence was not legally permitted for the offense and that the trial court failed to determine that he committed the murder with the necessary intent to support a life sentence or that the defendant understood that it was necessary to commit the murder with a particular intent to qualify for a natural-life sentence. (Doc. 23-3 at 1). In a Rule 23 Order in April 2003, the Illinois Appellate Court affirmed the denial of petitioner's motion to withdraw his guilty plea and upheld the conviction entered by the Circuit Court of Madison County, Illinois. (Doc. 23-3 at 11); (Doc. 23-4 at 3).

In May 2003, Hotz filed a Petition for Leave to Appeal ("PLA") to the Supreme Court of Illinois, arguing that: (1) the Illinois Appellate Court abused its discretion in denying Hotz's motion to withdraw his guilty plea because the plea was not knowing and voluntary; (2) although he agreed to the sentence of life imprisonment, he was misled as to the availability of that sentence for the offense to which he was pleading guilty; and (3) the sentence was not legally permitted for the offense and that the trial court failed to determine that he committed the murder with the necessary intent to support a life sentence or that the defendant

2

understood that it was necessary to commit the murder with a particular intent to qualify for a natural-life sentence. (Doc. 23-4 at 1). On October 7, 2003, the Supreme Court of Illinois denied the PLA. (Doc. 23-5 at 1).

### II. First Petition for Post-Conviction Relief

On April 19, 2004, Hotz filed a *pro se* combined petition for post-conviction relief and relief from judgment in the Circuit Court of Madison County, Illinois. Petitioner argued that he was entitled to withdraw his plea for the following reasons: (1) newly discovered evidence rendered his conviction unreliable; (2) he was denied due process because his plea was neither voluntary nor intelligently made; (3) his constitutional right to competent plea counsel was abrogated through his attorney's failure to move to quash his arrest and suppress the evidence that was garnered at the time of his arrest; and (4) a natural-life sentence was erroneously imposed where the maximum prison sentence that could be statutorily imposed was from twenty to sixty years' imprisonment. (Doc. 23-9 at 3). Petitioner's pleading did not deny that he murdered the victim and he did not argue that appellate counsel rendered ineffective assistance of counsel. (Doc. 23-9 at 3). On July 19, 2006, the circuit court denied petitioner's post-conviction petition on the grounds of res judicata, forfeiture, and failure to present an issue of a constitutional magnitude. (Doc. 23-9 at 5).

Petitioner appealed, arguing that the circuit court erred in dismissing his petition because: (a) he should have been allowed to withdraw his guilty plea because the factual basis for his plea was insufficient to prove certain elements that were necessary to demonstrate the offense of home invasion: that his entry

3

into the victim's apartment was unauthorized or that he "entered with criminal intentions;" and (b) his plea was invalid when plea counsel rendered ineffective assistance by failing to speak to him or obtain discovery materials prior to the entry of the plea.  (Doc. 23-9 at 5).  On February 5, 2008, the appellate court affirmed the denial of the post-conviction petition.

Petitioner filed a PLA, raising the same claims that he presented to the Illinois Appellate Court.  (Doc. 23-10).  On May 29, 2008, the Illinois Supreme Court denied the PLA.  (Doc. 23-11).

### III. Federal Petition for Writ of Habeas Corpus

On December 1, 2008, petitioner filed the instant petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Doc. 1).  In his petition, Hotz alleges that his plea counsel rendered ineffective assistance; the sufficiency of the factual basis for the plea was inadequate in light of newly discovered evidence; and his guilty plea was not knowing and voluntary.  (Doc. 1); (Doc. 23 at 10).

### RELEVANT FACTS

The Illinois Appellate Court described the relevant facts of the case as follows:

> On September 21, 2001, the defendant entered a fully negotiated plea of guilty to one count of first-degree murder stemming from his July 6, 2001, murder of M.L.M. in the course of the commission of a home invasion.  The defendant had strangled the victim with a telephone cord as he sodomized her.  The defendant was identified as the perpetrator of the crime when biological evidence that he had left at the scene of the murder was matched with his sex offender's DNA sample in the Combined DNA Index System (CODIS) data bank. He confessed to the police that he had sodomized and murdered M.L.M., and then he led them to the location where he had disposed of the telephone cord with which he had garroted the victim.  His

4

guilty plea was entered in exchange for the State's agreement to drop two counts of first-degree murder and two counts of aggravated criminal sexual assault and to not seek the death penalty. The defendant, who had prior felony convictions for aggravated criminal sexual assault, deviate sexual assault, rape, and failure to register as a sex offender, was sentenced to natural-life imprisonment. On March 7, 2002, the defendant testified in support of his amended motion to withdraw his plea. The court found that the defendant's plea was knowing and voluntary and that he had not been under the influence of drugs when he entered his plea. It noted that the State had sought the death penalty for the defendant, that the defendant faced a mandatory natural-life sentence on the aggravated-criminal-sexual-assault charge, that he had confessed to the murder and DNA directly connected him with the crime, and that he had led the police to evidence that he had disposed of after the murder. The judge stated that the fact that the defense had managed to negotiate a natural-life sentence where the State had sought the death penalty demonstrated that there was definitely no misrepresentation of counsel in this case.

(Doc. 23-9 at 1–2) (internal citations omitted).

DISCUSSION

## I. Petitioner's Ineffectiveness of Counsel Claims Are Procedurally Defaulted and Lack Merit.

Generally, federal courts cannot review a petition for writ of habeas corpus premised on questions of federal law unless the petitioner exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1)(A); *Gomez v. Jaimet*, 350 F.3d 673, 677 (7th Cir. 2003). When "a petitioner does not adequately present a claim to the state court" the claim is procedurally defaulted and will not be considered on the merits by a federal court on habeas review unless there is a showing of "cause and prejudice for the default or . . . that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (citing *Moore v. Casperson*, 345 F.3d 474, 484 (7th Cir.

2003)); *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (finding that a fundamental miscarriage equals "the conviction of an innocent person"); *see Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000).

When a state court denies a prisoner relief on a question of federal law and bases its decision on a state procedural ground that is independent of the federal question, the federal question is procedurally defaulted. *Lee v. Davis*, 328 F.3d 896, 899–900 (7th Cir. 2003); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Even when both the merits of a claim and a state procedural bar are discussed together, the state procedural grounds will be determinative if they are clearly presented and they constitute an adequate independent ground for the denial of the state habeas petition. *Lee*, 328 F.3d at 899–900.

This rule promotes federalism by respecting the importance of state procedural rules and the finality of state court judgments. *Gomez v. Jaimet*, 350 F.3d 673, 677 (7th Cir. 2003). Furthermore, it discourages defense lawyers from withholding constitutional claims in state proceedings to have them heard first in federal court. *Id.*

Petitioner's ineffectiveness of plea counsel claim is procedurally barred for failure to bring it previously on direct appeal. Although the state court gave alternative reasoning on the merits, this does not preclude the effect of the procedural bar as this was a clear and express decision of the Illinois Appellate Court. Petitioner also cannot show sufficient cause and prejudice or actual innocence to overcome the procedural bar because he did not claim on direct

appeal of his post-conviction petition that his appellate counsel provided ineffective assistance of counsel by failing to raise the issue of ineffectiveness of plea counsel.  Finally, even if the claims weren't procedurally barred, petitioner also would be unsuccessful upon review of his claims on the merits.

### A.  Petitioner's Ineffectiveness of Counsel Claims Are Procedurally Defaulted

A petitioner must "fairly present" a claim before the state court to allow the state an opportunity to correct any constitutional violations.  *Sanders v. Cotton*, 398 F.3d 572, 581 (7th Cir. 2005).  This fair presentment requirement means that the petitioner must invoke "one complete round of the state's established appellate review process" for each claim.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005).  He must present "operative facts and controlling legal principles" for the state court to review.  *Sanders*, 398 F.3d at 580.  "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."  *Bintz*, 403 F.3d at 863.  The burden is upon the respondent to show that the petitioner has procedurally defaulted his claims.  *Id.*

In Illinois, post-conviction review is only open to claims that could not have been raised on direct appeal.  Illinois has a procedural rule providing that a defendant must assert ineffective assistance of counsel claims on direct appeal that are apparent from the record, or risk forfeiture of the claim on post-conviction review.  *Diggs v. Hulick*, 236 Fed. Appx. 212, 216 (7th Cir. 2007).

When, under this rule, the state court declines to review a claim not properly raised, the state court decision rests upon a state law ground that is both "independent of the federal question and adequate to support the judgment." *Id.*; *Gomez v. Jaimet*, 350 F.3d 673, 677 (7th Cir. 2003); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). An adequate and independent state ground bars federal habeas review of constitutional claims only if "the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on the state procedural bar." *Gomez*, 350 F.3d at 677–78; *Harris v. Reed*, 489 U.S. 255, 263 (1989).

Here, the Illinois Appellate Court was the last state court to consider petitioner's case; the Illinois Supreme Court denied review. The Illinois Appellate Court "clearly and expressly" found that petitioner waived his ineffective assistance of plea counsel claim by failing to raise the inadequacy of plea counsel's representation on direct appeal. Petitioner only raised the ineffective assistance of plea counsel claim for the first time in his petition for post-conviction relief. Because petitioner failed to bring his ineffective assistance of plea counsel claim previously, at trial or on direct appeal, he is procedurally barred from raising it now.

Petitioner also cannot show sufficient cause and prejudice or actual innocence to overcome this procedural bar. Defaulted claims can only be considered if a petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750; *Hernandez v. Hulick*, 2007 U.S. Dist. LEXIS 4987 (N.D. Ill. Jan. 22, 2007).

Under the cause-and-prejudice test for excusing a procedural default in habeas proceedings, a cause is defined as, an objective factor, external to the defense, which impeded the defendant's efforts to raise the claim in an earlier proceeding.  *Smith v. McKee*, 598 F.3d 374, 383–84 (7th Cir. 2010).  Prejudice means, an error which so infected the entire trial that the resulting conviction violates due process.  *Id.*  In the absence of cause and prejudice, petitioner must show a fundamental miscarriage of justice.  *Id.*  The fundamental miscarriage of justice exception to procedural default requires a habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Id.*  To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  *Id.*

Here, petitioner does not argue that the procedural default should be excused under either cause and prejudice or a fundamental miscarriage of justice. Even assuming that petitioner argues the applicability of one of the exceptions, he would still be unsuccessful.  Petitioner failed to claim on appeal of his post-conviction petition that his appellate counsel provided ineffective assistance of counsel by failing to raise the issue of ineffectiveness of plea counsel.  An independent claim of ineffectiveness of counsel must itself be fairly presented at

each level of the state appellate process before it can serve as cause for the procedural default of another claim. *Edwards v. Carpenter*, 529 U.S. 446, 452–54 (2000); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (a procedurally defaulted ineffectiveness claim cannot excuse the default of other claims). For these reasons, petitioner fails to show cause and prejudice or a fundamental miscarriage of justice and is not entitled to a review of his habeas petition on the merits.

Although failure to raise an issue on direct appeal bars the defendant from attempting to raise it later, in a post-conviction proceeding, a defendant still may be able to overcome that bar. *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991). A defendant is not barred from "claiming ineffective assistance of counsel for the first time in the post-conviction proceeding in any case in which the claim is based on extrinsic evidence, because the [bar] applies only to claims the factual basis for which was laid in the original trial." *Id.* It will not bar him in any event if his counsel for the direct appeal was his trial counsel, who can hardly be expected to challenge on appeal his own effectiveness at trial. *Id.* Here, petitioner makes no argument for the ineffective assistance of counsel based on extrinsic evidence. Moreover, petitioner had different counsel at trial and on direct appeal. Thus, petitioner's claim is still procedurally barred.

Finally, the Illinois Appellate Court's review of the merits of petitioner's ineffectiveness claims also does not excuse the procedural default. Even when both the merits of a claim and a state procedural bar are discussed together, the

state procedural grounds will be determinative if they are clearly presented and they constitute an adequate independent ground for the denial of the state habeas petition. *Lee v. Davis*, 328 F.3d 896, 899–900 (7th Cir. 2003). An adequate and independent state ground bars federal habeas review of constitutional claims only if "the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on the state procedural bar." *Gomez v. Jaimet*, 350 F.3d 673, 677–78 (7th Cir. 2003); *Harris v. Reed*, 489 U.S. 255, 263 (1989). As explained above, the Illinois Appellate Court "clearly and expressly" found that petitioner waived his ineffective assistance of plea counsel claim by failing to raise the inadequacy of plea counsel's representation on direct appeal.

### B. Petitioner's Ineffectiveness of Counsel Claims Lack Merit

A federal court's review of state court decisions is limited by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). When dealing with a state court's determination on the merits, a federal court may only grant habeas relief if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012). The relevant decision that is reviewed by federal courts under AEDPA is always the decision of the last state court to rule on the merits of the petitioner's claims.[1] *Id.*

---

[1] In this case, that is the Illinois Appellate Court's decision from Hotz's post-conviction appeal of his conviction. (Doc. 23 at 2).

A state court decision is "contrary to" federal law when it "contradicts the governing law set forth in [Supreme Court] cases." *Id.* A state court's decision is "contrary to" clearly established Supreme Court precedent when it reaches a legal conclusion that is opposite to a legal conclusion announced by the Supreme Court. *Coleman*, 690 F.3d at 814; *Morgan v. Hardy*, 662 F.3d 790, 798 (7th Cir. 2011). A state court's conclusion is an "unreasonable application" of Supreme Court precedent when the state court identifies the correct legal rule as determined by the Supreme Court, but unreasonably applies it to the facts of the case, unreasonably extends a legal principle from existing precedent, or refuses to extend that principle to a new context where it should apply. *Id.*

The writ may not issue merely because the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *see also Owens v. Frank*, 394 F.3d 490, 497 (7th Cir. 2005). The burden is on the Petitioner to show that he is entitled to relief. *See Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004).

The federal courts give great deference to state court factual findings. *Coleman*, 690 F.3d at 815. After AEDPA, federal courts are required to presume a state court's account of the facts correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; 28 U.S.C. § 2254(e)(1). The Illinois Appellate Court described the following interactions between petitioner and his plea counsel:

On February 15, 2006, an evidentiary hearing was held on the merits of the defendant's petition, his January 20, 2006, *pro se* amendment to the petition, his successive *pro se* motion to withdraw his guilty plea, and the State's motion to dismiss that motion.  The defendant and his plea counsel both testified at length. The testimony heard by the court established that his plea counsel had conferred several times with the defendant and with his family prior to the date that the defendant pleaded guilty.   He also had reviewed the State's discovery material before the defendant entered his plea.   The defendant had been eager to plead guilty in order to remove the death penalty from the sentencing equation.   The defendant did not deny that he had killed the victim.   He testified that he never saw his plea counsel or the discovery materials until the date that he entered his guilty plea. After he pleaded guilty, he had obtained copies of the State's discovery materials, the "newly[] discovered evidence" to which his petition referred.   He claimed that the discovery materials proved that he had not committed home invasion because the victim's home was not in disarray and the victim had been murdered sometime after she allowed him to enter.

He argued that he should not have been sentenced to natural life in prison:  '[T]here was no home invasion, and it [was] my first murder, and it was an accident. I said it was an accident.'  The court granted the State's motion to dismiss the defendant's *pro se* successive motion to withdraw his plea and continued the hearing on the defendant's post-conviction petition.

On March 2, 2006, the hearing resumed.   The assistant State's Attorney who had prosecuted the defendant testified that prior to the date upon which the defendant entered his plea, the State had provided plea counsel with all the discovery material and had told counsel that blood found at the crime scene had been positively identified through CODIS as the defendant's.  A police officer who had been assigned to the case also testified that the defendant appeared not to be under the influence of drugs when he confessed to murdering the victim.   The hearing was again continued to allow the defendant to present another witness's testimony.   On March 9, 2006, the defendant's plea counsel testified that after his March 2, 2006, testimony, he had located and read the defendant's file.   He had received voluminous discovery material from the State that he had read at home over the weekend before the plea was taken.   He definitely remembered conferring with the defendant about his case after he had read all the discovery material that the State had provided and before the defendant entered his plea. Although no

written report was yet available on the match between the defendant's blood in the CODIS sex offender data bank and the blood that had been recovered from the back of the victim's pajama top, the State had told him the day before the plea that the match had been made. He testified that many times he would not sign in at the jail when he visited his clients, and thus there might be no written record of his consultation with the defendant, but he had conferred with the defendant at least three times before the defendant pleaded guilty. On July 19, 2006, the court denied the defendant's post-conviction petition on the basis of res judicata and forfeiture and expressly found that his claims of inadequate assistance of plea counsel had failed to present any issue of constitutional magnitude.

(Doc. 23) (internal citations omitted).

After summarizing these facts, the Court of Appeals addressed the ineffective assistance of counsel claims on their merits. The court cited *Strickland v. Washington*, 466 U.S. 668 (1984) as the applicable standard and reasoned:

Despite the defendant's obvious forfeiture of the issue, the allegations in the defendant's post-conviction petition about plea counsel's allegedly inadequate representation were exhaustively explored at the three hearings on the defendant's petition. The record supports the conclusion that the discovery material upon which the defendant bases his claim was in his counsel's possession prior to the entry of his plea, that counsel had reviewed the discovery material prior to advising the defendant to plead guilty, that the discovery material did not undermine the evidence of home invasion and murder upon which the defendant's plea and conviction were based, and that counsel had conferred with the defendant more than once prior to the time that he pleaded guilty. The evidence against the defendant was truly overwhelming: the blood that was found on the back of the victim's pajama top matched the defendant's sex offender's DNA sample, he confessed to the murder, he led the police to a field where he had thrown away the remnant of the telephone cord with which he had garroted the victim, and he entered a knowing and voluntary plea of guilty to murdering the victim in the course of a home invasion. Moreover, at the hearing on his post-conviction petition he made a judicial admission that he had murdered the victim. The record substantiates that the trial court did not abuse its discretion when it

> found the defendant's post-conviction allegations of attorney
> inadequacy to be subject to res judicata and forfeited and not to be of
> constitutional magnitude.

(Doc. 23) (internal citations omitted).

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on the merits of an ineffective assistance of counsel claim, petitioner must prove both that (1) his counsel's performance fell below "an objective standard of reasonableness," and (2) "there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688; *Smith v. McKee*, 598 F.3d 374, 384 (7th Cir. 2010). When a court reviews a petitioner's claim, it must evaluate whether his counsel's performance undermined the adversarial process to the extent that "the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. A court's review of counsel's performance "must be highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* The Court notes, however, that "[a] defendant's own conduct may serve to waive his right to appointed counsel." *Hall v. Washington*, 106 F.3d 742, 751 (7th Cir. 1997).

The standard for judging performance of counsel on de novo review is highly deferential, as is the standard under § 2254(d). *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). "When the two apply in tandem," deference is "doubly so." *Id.* "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In applying both the deferential standard of *Strickland* and the deferential standard of § 2254(d), this Court finds that it was not unreasonable for the state court to conclude that petitioner was adequately represented by plea counsel. As noted by the state court, the evidentiary record supports the conclusion that the discovery material upon which the defendant based his claim was in his counsel's possession prior to the entry of his plea, that counsel had reviewed the discovery material prior to advising the defendant to plead guilty, that the discovery material did not undermine the evidence of home invasion and murder upon which the defendant's plea and conviction were based, and that counsel had conferred with the defendant more than once prior to the time that he pleaded guilty.

Moreover, the state court found that the evidence against the defendant was truly overwhelming because: the blood that was found on the back of the victim's pajama top matched the defendant's sex offender's DNA sample, he confessed to the murder, he led the police to a field where he had thrown away the remnant of the telephone cord with which he had garroted the victim, and he entered a

knowing and voluntary plea of guilty to murdering the victim in the course of a home invasion.  Finally, at the hearing on his post-conviction petition he made a judicial admission that he had murdered the victim.  Therefore, the Court finds that the appellate court's determinations regarding ineffective assistance of counsel were neither contrary to nor an unreasonable application of clearly established federal law.  Accordingly, the Court denies relief on these grounds.

### II. Petitioner's Adequacy of Plea Claims Are Procedurally Defaulted, Noncognizable, and Lack Merit

This claim is procedurally barred because petitioner failed to raise it at trial.  Petitioner argues that the factual basis for his plea was inadequate to support the finding of guilty in light of newly discovered evidence identified though the discovery process.  Petitioner claims that this new evidence establishes that: (1) someone else could have committed the crime; (2) no home invasion occurred; (3) he did not visit the victim with a predetermined disposition to commit a crime; (4) when the coroner visited the scene, the victim was still bleeding; (5) no DNA match proved that petitioner committed a sexual assault; and (6) state officials informed police to look for a family member before targeting petitioner.  (Doc. 1 at 5(b)1–5(b)2).

Again, petitioner's claim is procedurally barred.  When a state ground (such as failure to make a contemporaneous objection, or to raise an issue on appeal) supports a state court's rejection of an argument based on federal law, that federal issue cannot be raised on collateral attack unless the prisoner shows cause for, and prejudice from, that default. *Brooks v. Walls*, 279 F.3d 518, 522

(7th Cir. 2002); *Coleman v. Thompson*, 501 U.S. 722, 729–35 (1991).  The Illinois Appellate Court held on post-conviction appeal that petitioner forfeited the issue of the sufficiency of the factual basis for the plea when he failed to raise it in the trial court or on direct appeal.  (Doc. 23-9 at 8)  Petitioner also failed to avert forfeiture when he filed his post-conviction petition because he did not claim that his appellate counsel had provided ineffective assistance by not raising the issue of sufficiency of the factual basis for the plea on direct appeal.  *Id.*  Thus, the claim is procedurally defaulted.

Although the court held, in the alternative, that the claim was barred by *res judicata*, this does not save the claim from forfeiture.  Reliance on a state court finding of *res judicata* generally does not result in a procedurally defaulted claim on federal habeas.  *Moore v. Bryant*, 295 F.3d 771, 776–77 (7th Cir. 2002). When a state court decides the merits and asserts a procedural bar, the federal court must respect both rulings.  *Brooks*, 279 F.3d at 522.  When state courts disagree about the right ground of decision, the ruling of the last state court to articulate a reason governs.  *Id.*  And when the last state court relies on dual grounds, the procedural ground means that the petition was not "properly filed." *Id.*

The Illinois Appellate Court held that the issue of sufficiency of the factual basis for the plea was also *res judicata* as a result of its decision on direct appeal. (Doc. 23-9 at 9).  The state court assessed the factual basis for the plea on direct appeal in the context of whether plain error would excuse the defendant's failure to preserve the issue of the sufficiency of the court's admonishments.  (Doc. 23-9

at 9).  However, the state court also clearly held that the issue was forfeited on post-conviction review because petitioner failed to raise it both in the trial court and in his subsequent direct appeal.  (Doc. 23-9 at 9).  Petitioner's claims are procedurally defaulted notwithstanding the state court's alternative reasoning for its judgment because the state court was clearly and expressly held that the procedural default acted to forfeit petitioner's claims.

Petitioner's claims fail to present cognizable grounds for habeas relief. Under Illinois law, the trial court was bound to investigate the factual basis for petitioner's guilty plea.  *Donald v. Peters*, 1991 U.S. App. LEXIS 31050, at *3 (7th Cir. Dec. 27, 1991); s*ee* Ill. Sup. Ct. R. 402.  This Illinois law is expressly patterned after Federal Rule of Criminal Procedure 11, which requires that the factual basis for a guilty plea in federal court be established by the district judge. *Donald*, 1991 U.S. App. LEXIS 31050, at *3; Fed. R. Crim. P. 11.  It is well-settled, however, that Rule 11 is not a constitutional requirement.  *Donald*, 1991 U.S. App. LEXIS 31050, at *3; *United States v. Timmreck*, 441 U.S. 780, 783 (1979) ("A violation [of Rule 11] is neither constitutional nor jurisdictional."). Because the post-conviction petition involves a state procedural rule rather than a constitutional question petitioner's claim is noncognizable.

Finally, the petitioner's claims also lack merit.  Petitioner argues that newly discovered evidence undermines the State's factual basis for the plea.  (Doc. 1 at 5(a)(13)-5(b)(1)).  Petitioner's proposed evidence includes the following:  someone else "could have" committed the crime because a person was in the victim's

backyard days before the murder; there was no home invasion because petitioner had been allowed into the victim's house the day before the victim was found dead; petitioner's self-serving statement that he "had no predetermined disposition" to cause the victim harm; the victim was bleeding when the coroner arrived; no DNA match existed of a previous sexual assault; and at one point, family members were being questioned.  (Doc. 1 at 5(b)1–5(b)2).

Petitioner's argument is meritless, and he has failed to rebut the state appellate court's fact-bound holding with the requisite clear and convincing evidence.  *See* § 2254(e)(2).  Petitioner claims that he obtained newly discovered evidence on November 3, 2003 that neither he nor his plea counsel had access to until after he pleaded guilty.  (Doc. 1 at 5(b)1).  First, the Illinois Appellate Court held that the evidence was available to both petitioner and his plea counsel prior to pleading guilty.  On post-conviction appeal, the Illinois Appellate Court held that "[t]he record supports the conclusion that the discovery material upon which the defendant bases his claim was in his counsel's possession prior to the entry of his plea, that counsel had reviewed the discovery material prior to advising the defendant to plead guilty, that the discovery material did not undermine the evidence of home invasion and murder upon which the defendant's plea and conviction were based, and that counsel had conferred with the defendant more than once prior to the time that he pleaded guilty."  (Doc. 23).  Petitioner had access to the information prior to filing his April 19, 2004 post-conviction petition to the state court.

20

Petitioner's proposed evidence does not rebut the state court's reasonable factual determination that his plea was sound and based on sufficient proof.  The Illinois Appellate Court held that:

> the evidence was not so closely balanced nor the error so fundamental and of such magnitude that the [Petitioner] was deprived of a fair trial, warranting the application of the plain error rule.  The factual basis presented to the court revealed overwhelming evidence of his guilt, including the DNA evidence that led to his arrest, his confession (the voluntariness of which he did not contest), and his act of leading the police to the missing telephone and its remnant of the cord with which the victim had been strangled to death after she unsuccessfully resisted being sodomized by the [Petitioner].

(Doc. 23-12 at 128); (Doc. 23-9 at 9).

Accordingly, for all of the aforementioned reasons, petitioner is not entitled to relief on his assertion that "newly discovered evidence" undermined the State's factual basis to support the guilty plea in violation of his federal constitutional rights.

### III. Petitioner's Claims that His Plea Was Unknowing and Involuntary Are Procedurally Defaulted and Lack Merit.

Finally, petitioner claims that his guilty plea was not knowing and voluntary because:  his lack of education prevented him from understanding the nature of the charge and the possible sentences; his apprehension of the proceedings was impaired because he was still suffering from the effects of taking cocaine three weeks prior to his plea; and he was compelled to make a life-altering decision in a short span of time.  (Doc. 1 at 6(c)(1)); (Doc. 23-9 at 9).  Petitioner is not entitled to habeas relief as these assertions lack merit.

A guilty plea must be voluntary and intelligent.  *Parke v. Raley*, 506 U.S.

21

20, 29 (1992).  A guilty plea "operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'"  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *Boatman v. United States*, 2012 U.S. Dist. LEXIS 158134 (S.D. Ill. Nov. 5, 2012).  "The whole point" of the plea colloquy is to ensure that the plea was knowingly and voluntarily made.  *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987); Fed. R. Crim. P. 11(b).  A claim that can succeed only if the defendant lied to the judge during the plea colloquy "may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."  *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).  Entry of a plea is not some empty ceremony, and statements made to a judge in open court are not trifles that defendants may elect to disregard.  *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999).  Petitioner bears the burden of proving that his plea was involuntary and unintelligent.  *Marx v. United States*, 930 F.2d 1246, 1250 (7th Cir. 1991).

A defendant must also be properly admonished when pleading guilty.  Illinois Supreme Court Rule 402 requires that the trial court admonish a petitioner as to:  (1) the nature of the charge; (2) the minimum and maximum sentences; (3) the right to plead not guilty; and (4) the waiver of his right to trial.  *See* Ill. Sup. Ct. R. 402; *Lockhart v. Chandler*, 446 F.3d 721, 724 n.1 (7th Cir. 2006).  The trial court must also determine whether petitioner's plea is knowing

and voluntary by stating the terms of the plea agreement, which petitioner must confirm in open court. *Id.*

The Illinois Appellate Court held that petitioner's argument as to the natural-life aspect of his plea claims was meritless. The state court held that "numerous *pro se* filings in the record substantiate that the defendant has a basic working knowledge of the legal system and the ability to adequately express his position and formulate a request for relief." The state court also held that the transcript of the plea proceedings contradicted any claims that the court failed to advise petitioner that a natural-life sentence was available to punish the crime to which he wanted to enter a guilty plea.

The transcript makes clear that the defense counsel stated the terms of the plea agreement, including the natural-life sentence, to which petitioner was in accord. (Doc. 23-9 at 9). The court also read the felony murder indictment to the defendant. The petitioner told the court that he understood that the indictment charged him with felony murder predicated on home invasion. (Doc. 23-9 at 9). The trial court explained the possible penalties in a manner that was comprehensible by a person of average intelligence. (Doc. 23-9 at 9). The defendant was properly advised of the only two sentencing options for the crime to which he wanted to plead guilty: life in prison without the possibility of parole or death. (Doc. 23-9 at 9).

The court then explained that the guilty plea waived petitioner's right to: (1) plead not guilty; (2) a trial by jury or bench (3) representation by the attorney

of his choice; (4) confront, cross-examine, and subpoena witnesses; (5) testify on his own behalf; and (6) a presumption of innocence. (Doc. 23-13 at 5–6). The court also informed petitioner that his guilty plea constitutes a waiver of all the aforementioned rights. (Doc. 23-13 at 5–6). Petitioner indicated that he understood each of these rights and admonitions by the court. (Doc. 23-13 at 5–6). The transcript demonstrates that the court properly admonished petitioner before he pleaded guilty.

Further, petitioner is not entitled to relief on his claim that his plea was not knowing or voluntary because he was under the influence of cocaine at the time the plea was entered. First, this claim is procedurally defaulted. The Supreme Court has described waiver as the "intentional relinquishment or abandonment of a known right." *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011); *United States v. Olano*, 507 U.S. 725, 733 (1993). It is well established in Seventh Circuit precedent that "skeletal" arguments may be properly treated as waived, as may arguments made for the first time in reply briefs. *Hernandez*, 634 F.3d at 913. The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument. *Id.*

As respondent correctly points out, while petitioner did claim that his plea was not knowing or voluntary on direct appeal, and acknowledged his drug claim in the statement of facts of his brief (Doc. 23-1), he failed to raise it in the argument portion of his brief, preventing the state appellate court from

considering it in its order.  (Doc. 23-1 at 6–12).  And because his PLA on direct appeal consisted of his direct appeal brief (Doc. 23-4), petitioner also failed to raise the claim before the state supreme court that his drug use prohibited him from knowingly and intelligently pleading.  This claim is thus procedurally defaulted because petitioner's mere mention of the issue in the statement of facts of his direct appeal brief is perfunctory at best.  *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *Baeco Plastics v. Inacomp Fin. Servs.*, 1995 U.S. App. LEXIS 6527 (7th Cir. Mar. 29, 1995) ("A party's principal argument must appear in the opening brief, so that it may be answered.  A litigant may not throw down a gauntlet in the opening brief and reserve its argument for the reply brief."); *United States ex rel. Madej v. Schomig*, 223 F. Supp. 2d 968, 2002 U.S. Dist. LEXIS 17996 (N.D. Ill. September 24, 2002) ("Like arguments presented initially in a reply brief, perfunctory arguments are also waived.").

This claim is also without merit because petitioner cannot demonstrate that his plea was defective because he was under the influence of cocaine.  At no time during the proceedings or before waiver of the procedural safeguards mentioned above did petitioner alert the court that he was feeling the effects of cocaine withdrawal and therefore was unable to comprehend what was happening.  (Doc. 23-13 at 1–16).  In fact, during the motion to withdraw the guilty plea, the court noted that although petitioner may have been under the influence of drugs at the time of his arrest, Petitioner had been in custody for fourteen days or longer before entering the guilty plea.  (Doc. 23-14 at 49).  Petitioner's failure to object or

alert the court to any possible cocaine usage at the hearing precludes petitioner from now asserting that the court erred in accepting his plea.  Because petitioner provides insufficient evidence to establish that he suffered from the effects of cocaine withdrawal during the plea hearing, he cannot show that his plea was unknowing and involuntary and he is not entitled to federal habeas relief.

### IV. Petitioner Is Not Entitled to a Certificate of Appealability

Further, the Court declines to issue a certificate of appealability on any of petitioner's claims.  See Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (eff. Dec. 1, 2009).  Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," which is interpreted to mean the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part, *Id.* at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  If the district court denies the certificate, the petitioner may request a circuit judge to issue it.  Fed. R. App. P. 22(b)(1).

Petitioner does not provide a compelling explanation for contradicting the sworn statements in his plea colloquy and plea agreement.  Reasonable jurists

might infer that the claims in petitioner's habeas petition are either procedurally defaulted or without merit.  There is no basis for believing that reasonable jurists would find the state court's assessment of the constitutional claims debatable or wrong.  Consequently, petitioner has not made a substantial showing of the denial of a constitutional right.  A certificate of appealability will not be issued.

### CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED** and that this matter is **DISMISSED WITH PREJUDICE**.  Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**DATED:  March 26, 2013**

Digitally signed by
David R. Herndon
Date: 2013.03.26
14:25:45 -05'00'

**Chief Judge**
**United States District Court**

27